**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| **HASSAN RAFLE, and** | ) | Cause No. | 1:11-cr-15-WTL-KPF-7 |
| | ) | | |
| **JAMA MIRE,** | ) | | 1:11-cr-15-WTL-KPF-8 |
| | ) | | |
| Defendants. | ) | | |

## ENTRY FOLLOWING BENCH TRIAL

The prosecution, the United States of America ("the Government"), seeks a criminal conviction of the Defendant Hassan Rafle for violating 21 U.S.C. § 846 by knowingly conspiring with other persons to possess with intent to distribute and to distribute cathinone, a Schedule I Narcotic Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). For the following reasons, the Court finds the Defendant Hassan Rafle **GUILTY** as charged in the indictment.

The Government also seeks a criminal conviction of the Defendant Jama Mire for (1) violating 21 U.S.C. § 841(a)(1) by knowingly conspiring with other persons to possess with intent to distribute and to distribute cathinone, a Schedule I Narcotic Controlled Substance; (2) violating 21 U.S.C. § 856(a)(1) by knowingly using or maintained a place for the purpose of distributing and using any controlled substance, to-wit: cathinone, a Schedule I Narcotic Controlled Substance; and (3) violating 21 U.S.C. § 841(a)(1) by knowingly possessing with intent to distribute a mixture or substance containing a detectable amount of cathinone, a Schedule I Narcotic Controlled Substance. For the following reasons, the Court finds the Defendant Jama Mire **GUILTY** as charged in the indictment as to Count One, **GUILTY** as

charged in the indictment as to Count Two, and **GUILTY** as charged in the indictment as to Count Three.

## I. LEGAL STANDARDS

### A. Conspiracy

In order for the Court to find the Defendant guilty of conspiracy under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt that (1) two or more persons reached an agreement to possess with intent to distribute and to distribute cathinone, a Schedule I Narcotic Controlled substance; (2) the Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; and (3) at the time the Defendant joined in the agreement, he knew the purpose of the agreement or understanding.

The Government need not prove the commission of any overt acts in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S. 10, 15-16 (1994). However, because conspiracy is a specific intent crime, and given the unique structure of the CSA with regard to cathinone, the government must show that the defendant knew that khat contained a controlled substance.[1]

### B. Maintaining a Place

In order for the Court to find the Defendant guilty under 21 U.S.C. § 856(a)(1), the Government must prove beyond a reasonable doubt that (1) the Defendant knowingly used and maintained a place; and (2) the Defendant did so for the purpose of distributing and using a controlled substance.

The Government is not required to show that a place is maintained *exclusively* for the

---

[1] See the Court's entry regarding the Defendants' Rule 29(a) motion for discussion of this requirement.

distribution and use of drugs. Rather, the defendant must have the distribution and use of drugs as a specific purpose for the place. *See United States v. Church*, 970 F.2d 401, 405-06 (7th Cir. 1992) (quoting a Fifth Circuit case holding that drug manufacturing must not be *sole* purpose of place under § 856(a)(1), and finding that evidence was sufficient to establish purpose of distribution where testimony established "significant commercial sales" at the location in question).

Given the unique structure of the CSA with regard to cathinone, the government must also show that the defendant knew that khat contained a controlled substance.

### C. Possession with Intent to Distribute

In order for the Court to find the Defendant guilty under 21 U.S.C. § 841(a), the Government must prove beyond a reasonable doubt that (1) the Defendant knowingly or intentionally possessed a mixture or substance containing a detectable amount of cathinone; and (2) the Defendant possessed the mixture or substance containing cathinone with the intent to deliver it to another person.

To be convicted for possessing drugs, defendant must have ultimate control over drugs; the drugs need not have been literally in his hands, but "he must have right (not the legal right, but the recognized authority in his criminal milieu) to possess them." *United States v. Perlaza*, 818 F.2d 1354, 1360 (7th Cir. 1987) (quoting *United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir. 1986)). "A possessory interest over the location of the contraband can provide evidence of [such] constructive possession." *United States v. Harris*, 325 F.3d 865, 869 (7th Cir. 2003) (recognizing that other courts have found that a person may be deemed in constructive possession of items found on the premises of property they own).

Intent to distribute drugs may be inferred when the amount found in the defendant's

possession greatly exceeds the amount normally possessed for personal use. *United States v. Combs*, 222 F.3d 353, 362 (7th Cir. 2000).

## II. <u>FINDINGS OF FACT</u>

This matter came before the Court for a bench trial from March 26, 2012 through March 30, 2012. Based on the testimony heard and the evidence adduced at trial, the Court makes the following findings of fact.

### A. Hassan Rafle

Hassan Rafle (aka "Maqtal") is an over-the-road truck driver who was roommates with government witness Hussein Ahmed from May 2009 to June 2010. Ahmed testified that, because Rafle was a truck driver, "sometimes he left" and "sometimes he came back" while they lived together.

Rafle transported dry khat for Ahmed from Columbus, Ohio, to Indianapolis, Indiana, until roughly the end of 2010. Rafle, who knew that he was transporting khat, was paid roughly $400 per trip to transport it. While in Columbus, Rafle also purchased khat on Ahmed's behalf.

On October 29, 2010 at 6:51 p.m. there was a call between Rafle and Ahmed. Rafle related that he was just entering the State of Ohio and was twenty miles away from Dayton. Rafle stated to Ahmed that he (Rafle) would call Ahmed once he arrived in the city.

That same day at 8:17 p.m., Ahmed called Rafle to give him a phone number. Rafle was told to buy "one box" and to tell the seller that he (Rafle) was sent by the "Sultan." Rafle was told by Ahmed that the price had not been negotiated, but Rafle was to call Ahmed if the seller asked for more than $1400.

At 9:22 p.m., Ahmed called Rafle, who was in Columbus, to discuss the sale in progress. Rafle reported that the seller could only provide him with half of the original amount that Ahmed

had anticipated. Nevertheless, Rafle and Ahmed decided to purchase this lesser amount of khat because there was no khat in Indianapolis to be had. Ahmed then suggested that he and Rafle sell the khat, explaining to Rafle that it would turn a good profit, and Rafle agreed. Lines 53 through 69 of the telephone transcript are particularly telling and clearly evidence a conspiratorial agreement.

At 11:25 p.m. Ahmed called Mohamed Warsamey to tell him that Rafle was on his way back with "fresh and high quality stuff" and for Warsamey to call his purchasers and to start collecting money.

During another phone call at 1:26 a.m. on October 30, 2010, Ahmed asked where Rafle was, and Rafle replied that he was just crossing Interstates 465 and 70. Ahmed advised Rafle to get off on the Michigan exit and "change to local roads."

During another call ten minutes later, Ahmed suggested that Rafle meet him at a restaurant called the Rathskeller because it did not have much traffic. Rafle explained that he had already driven past the Rathskeller and suggested that the two meet at the Greyhound bus station. While Ahmed was reluctant because "there could be people at the Greyhound station," he agreed to meet Rafle there.

The Court also heard testimony that Rafle sent money to Ahmed's sources of supply via wire transfer. The money was sent to Ahmed's sources of supply after Ahmed had sold the khat he had received from his source.

On December 12, 2009, $670.00 was sent to a "Yasin Hassan Abdulahi" via wire transfer service Dahabshil, Inc. Abdulahi was one of Ahmed's sources of supply for fresh khat from June 2008 until the time that Ahmed was arrested in February 2011. The sender name listed on this receipt is "Omar Ali Abdi," but Handule Mohamed testified that Abdi was actually Rafle. The

Court heard testimony that Mohamed ran his business in a "criminal" manner, which included, among other things, falsifying names on wire transfer forms. The Court does not consider Mohammed a credible witness, and unless there is other verifiable evidence, it does not place much value on his testimony.

On April 17, 2010, at the request of Hussein Ahmed, Rafle sent $700.00 to "Guleed Ismail" in Holland via Dahabshil, Inc. Guleed Ismail (aka "Weli") was another one of Ahmed's sources of supply for fresh khat. Guleed Ismail served as one of Ahmed's sources from September 2007 until the time Ahmed was arrested in February 2011.

### B. Jama Mire

Defendant Jama Mire (aka "Abdi Aziz") is the proprietor of the Somali House of Coffee, located at 5636 and 5638 West Washington Street in Indianapolis, Indiana. Mire acquired the coffee shop in early 2009 from an unknown woman, who herself had acquired the coffee shop from Handule Mohamed. The Somali House of Coffee was also called "Hargeisa," which is also the name of a city in Somalia.

Roughly a year after acquiring the coffee shop, Mire expanded it to include one large room at the front of the building, which was decorated as a sort of lounge, and several smaller rooms at the back of the building. The windows facing the street in this large lounge room were darkened.

Hussein Ahmed testified that during the relevant time frame he saw individuals chewing khat in the lounge of the Somali House of Coffee nearly every time he visited it, which was quite often – four or five days a week. Hussein also admitted that he chewed khat at this location. On February 16, 2011, the day before Ahmed, Mire, and others were arrested in connection with the instant case, Ahmed observed approximately eighteen people chewing khat at the coffee house.

Jama Mire was present at the coffee shop on this date.

Ahmed further stated that he began selling fresh khat at the Somali House of Coffee in April 2009. In June 2009, Ahmed also began to sell dry khat there, which he testified was also called "G20." He explained that, before he began selling there, he and Mire had a discussion about selling khat at the shop. The two opined that selling khat at the shop would bring in more customers, which, according to Ahmed, did in fact occur. Hashim Ahmed also testified that when Hussein Ahmed sold the fresh khat at the Somali House of Coffe, that people would learn that it was there and they would come to the shop to buy it. Ahmed stored the khat he sold at the shop in an unlocked back room of the building, but he testified that he did not have keys to the shop. These facts clearly provide the existence of an agreement that was mutually beneficial to each.

On direct, Ahmed testified that, when he was not personally at the shop to sell khat to his customers, Ahmed paid Mire to sell the khat on Ahmed's behalf. However, on cross-examination, Ahmed testified that he did not pay Mire to sell khat on his behalf. As this testimony is contradictory, the Court does not give it much value.

Ahmed testified that he continued to sell dry khat with Mire's knowledge and permission at the coffee shop until March 2010, and he continued to sell fresh khat with the knowledge and permission at the coffee shop until April or May 2010. These time frames are within the relevant time period. At the very least, the elements of a conspiracy involving Husein Ahmed and Jama Mire existed until May of 2010.

In fact, Mire began selling dry khat himself at the coffee shop in March 2010. Mire did not get his khat from Ahmed and he did not share any of the profits of those sales with Ahmed. In fact, Ahmed agreed that Mire was in business for himself after March of 2010. Mire would

store this khat in two locked back rooms of the shop, although neither was the same room in which Ahmed had stored his khat. Mire packaged the khat he sold in Ziploc bags.

In a telephone conversation on September 17, 2010, Ahmed's friend Sayid asks him where he (Sayid) can get "green leaves" (which Ahmed testified was garabba) that evening. Ahmed replies that Sayid could get the garabba from Hargeisa (the Somali House of Coffee), but Sayid is reluctant to go there. After more discussion, Ahmed states "the little fat one who owns the place sells the stuff." Ahmed testified that "the little fat one" was a nickname for Mire.

Government witness Jafar Tuti, a cab driver in Chicago, Illinois, testified that Jama Mire was present with him (Tuti) when he rented a mailbox at a UPS store in September 2010. Tuti stated that Mire accompanied him to rent the mailbox because Tuti was planning on moving to Indianapolis and Mire was familiar with the city. However, Tuti changed his mind, and he did not move to Indianapolis. Tuti gave Mire the key to the UPS mailbox to return it, but Mire offered to pay for the box and use it himself. While Tuti paid between $60-100 to rent the mailbox for three months, he testified that Mire paid him $800 to continue to use the mailbox.

On February 17, 2011, Mire was arrested for the instant charge. Agent Jeremy Michaelis of the FBI interviewed Mire the same day. During this interview, Agent Michaelis asked Mire about the bags of garraba that were seized from the Somali House of Coffee. Mire told the agent that the garraba did not belong to him and that it may have been placed their by his enemies. Mire also stated that he had never seen khat in Indianapolis. Mire's statements to Agent Michaelis clearly show deception and are not credible and they also show criminal knowledge.

Also on February 17, the FBI executed a search warrant on the Somali House of Coffee. Agent Neil Freeman was the agent designated to seize all the evidence. However, upon arrival, agents discovered that the coffee house was locked, and so the agents had to wait for someone to

bring keys to open the doors. Agents Glen Carlson testified that Jama Mire brought the keys to open the coffee house.

On searching the Somali House of Coffee, agents found garbage bags containing a "green, leafy substance." Pictures taken on the coffee house that day depict an opened Ziploc bag of a dark green substance sitting open on a couch in the lounge area.

At trial, the Government introduced certain exhibits that Agent Freeman identified because he had seized them from the House of Coffee on February 17, 2011. Forensic chemist Luke Augustine testified at trial that these exhibits contained cathinone. He also testified that the net weight of two of the exhibits – meaning, the weight of plant, minus any packing or non-plant material – was 17.6 grams and 12.4 grams.

Agents also discovered a notebook. The notebook begins with a notation of March 6, 2010, and includes in the topic heading the phrase "G20." Hussein Ahmed explained during his testimony that "G20" is dry khat, or garaaba. The first page and the pages following it include what appear to be names in the left-hand margin, followed by dollar amounts, which are connected by a plus sign. Dates are written above some of these dollar amounts.

### III. DECISION

#### A. Hassan Rafle

The Court has found that Rafle purchased, transported, and delivered khat on behalf of Hussein Ahmed. In addition, the Court has found that Rafle agreed with Ahmed that they would sell the khat Rafle purchased on October 29, 2010. Rafle also wired money to a known khat supplier. Rafle's actions are indicative of an agreement to distribute and possess with intent to distribute cathinone, and his telephone conversation with Ahmed is direct and clear evidence of the same. Rafle's conversations with Ahmed indicate that Rafle was a party to this agreement.

Finally, the wiretapped telephone calls collectively are clear evidence that Rafle knew the purpose of this agreement.

Rafle argues that, since there is only four minutes and fifty-seven seconds of wiretapped conversations involving Rafle, this is insufficient to find that Rafle was indeed a conspirator. The Court disagrees. The fact that Rafle and Ahmed were roommates may easily explain why there was minimal telephone traffic between the two since they could very probably have had the majority of their conversations face-to-face.

Finally, the Court has found that Rafle and Ahmed sought to avoid high traffic areas when Rafle delivered khat. Such secretive behavior indicates that Rafle knew that the khat he was purchasing, transporting, and delivering contained an illegal substance. The Court therefore concludes that Rafle knew that khat contained a controlled substance.

### B. Jama Mire

*1. Conspiracy*

The Court has found that Jama Mire and Hussein Ahmed agreed that Ahmed would sell dry and fresh khat at the Somali House of Coffee, and that one reason for doing so was because it would increase customers to the coffee shop. This evidence is sufficient to establish a voluntary and intentional agreement that was created between Mire and Hussein with the purpose of possessing with intent to distribute and distributing khat. It also clear from this conversation that Mire knew the purpose of the agreement.

The Court has also found that, when questioned by Agent Michaelis, Mire denied having ever seen khat in Indianapolis and he denied ownership of the khat found at the Somali House of Coffee. In fact, Mire suggested that the khat had been placed there by his "enemies." Denial of ownership of the khat and deflecting responsibility for it are strong circumstantial evidence that

Mire knew that the khat contained an illegal substance. For these reasons, the Court concludes that Mire knew that khat contained a controlled substance.

### 2. Maintaining a Place

The Court has found that Mire was the sole proprietor of the Somali House of Coffee from early 2009 onward. From early 2009 to sometime in early to mid-2010, Mire permitted Hussein Ahmed to sell dry and fresh khat to coffee house customers because they believed that this would increase the number of customers at the coffee shop. Mire also permitted Ahmed to store his khat in the shop. In March 2010, Ahmed stopped selling khat at the shop when Mire began selling khat at the shop on his own. In addition, the notebook found at the coffee shop is strong evidence that one aspect of Mire's business included the sale of khat to his customers. Finally, Ahmed testified he observed customers chewing khat at the coffee shop. Together, the evidence clearly establishes beyond a reasonable doubt that Mire knowingly used and maintained the Somali House of Coffee for the purpose of using and distributing khat.

For the reasons stated above with respect to the charge of conspiracy, the Court concludes that Mire knew that khat contained a controlled substance.

### 3. Possession with Intent to Distribute

Agent Carlson testified that Jama Mire came to the Somali House of Coffee on February 17, 2011, with keys to open the shop for agents serving a search warrant. The Court concludes that the keys to the shop establish Mire's ultimate control and right to possess the drugs beyond a reasonable doubt. Therefore, Mire constructively possessed the items seized at the Somali House of Coffee that day.

The size and manner of packaging the green leafy substance, samples of which tested positive for cathinone, indicate an amount of khat too large to be used for personal consumption

and, rather, evidence Mire's intent to sell khat. In addition, Ahmed's testimony as to his experiences at the Somali House of Coffee and Mire's notebook indicate a continuing intent to sell khat. For these reasons, the Court finds that Mire possessed khat with intent to deliver it to another.

For the reasons stated above with respect to the charge of conspiracy, the Court concludes that Mire knew that khat contained a controlled substance.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the Defendant Hassan Rafle **GUILTY** as charged in the indictment and the Defendant Jama Mire **GUILTY** as charged in the indictment as to Count One, **GUILTY** as charged in the indictment as to Count Two, and **GUILTY** as charged in the indictment as to Count Three.

SO ORDERED: 04/23/2012

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.